Chief Justice Robertson,
delivered the opinion of the court.
James P. Mitchell, as assignee of John Finley executor of Elizabeth Strong deceased, sued Phinehas G. Rice and Gabriel Rice, in covenant *624 on a writing in which they jointly covenanted to pay 'to the said Elizabeth $800 in notes of the bank of the .commonwealth, on the 19th of May, 1825, with six per cent interest from the 19th of May, 1824, the date of the contract.
The defendants filed two pleas. In the first plea they averred that one of them (P. G. Rice) was nominated as a co-executor with John Finley, by the will of Elizabeth Strong, the covenantee;
In the second plea they averred that the will devised the whole estate, real and personal, to the wife of Finley, and appointed the defendant, P. G. Rice, a trustee to protect and take care of it for her benefit.
To both pleas the plaintiff replied that the will had been proved and admitted to record, and that Finley had been qualified as sole executor, and that his letters testamentary had never been revoked, but remained in full force.
The circuit court sustained demurrers to each of the replications, and the plaintiff having refused to plead over, judgment was rendered against him; to reverse which, he prosecutes this writ of error.
Neither the pleas nor replications are as full and explicit as they might have been; but inartificial and indefinite as they are, the legal as well as rational deduction from them, considered all together, is, that P. G. Rice had never taken the oath, nor given the bond (required by the statute of this state) of executors. Thus construing the pleadings, the sole question presented for consideration is, whether or not the action can be maintained?
The second plea is insufficient, so far as it relies on the alleged devise and trust as a bar: for, admitting those allegations to be true,still the executor, standing as to creditors, in loco lestaloris, had a primará right to so much of the estate devised as constituted legal assets; and consequently he had a right to collect the amount due on the covenant on which this suit is brought; and of course, had a right to assign it, and thus transfer the legal right to it, unaffected by the will. If he abused or shall abuse his discretion, his official bond presents the indemnity .provided byiaw.
At common law, when several were nominated ex ecutors by the will, a probate by one ehufed to the beneBtof all, and each had an equal right in all cases, to act, notwithstanding some of them had refused before the ordinary of failed to act:
At common law, in suits brought by executors it was necessary to join, as co-pl’tfs. all persons who were nominated as executors by the will, 'and who were alive.
But, in suits against executors it was ne-fcessary to sue only those who acted as executors.
At common law, it was. a general rule, that, if a creditor nominated his debtor execu tor of ónfe of his éki ecutors, or nominated one of several joint& several obligors his executor or one of his e* editors the debt was there by released.' But, if debtor appointed his creditor executor, that did not release or extinguish the debt, unless there were sufficient assets to enable executor to make his debt by retainer.
*625 We shall therefore inquire only whether the first plea with the replication to it, presents a bar to the action.
According to the common law, an executor derives from the will all his power: hence, before probate, an executor could at common law, release debts, and do almost every thing else which an executor could do after probate. He could not declare before probate, because a proferí of the letters testamentary was necessary to shew his legal authority. He was not required to give bond for the faithful performance of his trust, Hence when several were nominated in the will, a probate by one inured to the benefit of all, and each had an equal right in ail cases to act, even although some of them may have “refused” before the ordinary or failed to act: III. Atkins 239, IX. Coke 36, b. Toller on Executors 44, Wangford vs. Wangford, I. Salk. 299; V. Co. 28 a. Hard. III. And, as a necessary consequence (in suits brought by executors) it was necessary to unite all who were nominated and alive; I. Saunders (291 g. n. 4.) IX. Co. (Hensloes ca, 37.) I. Chitty’s Pleads lot Butina suit against executors it was necessary to sue only those who administered; because, as is said, a creditor or stranger is bound to take notice of those only as executors whoin factexecuted the will of acted as executors; III. Bac. Ab. Tit. Executor 33; Toller 471;I. Saunders supra. Hence, as the same person could not be both plaintiffand defendant in the same common law action, it was a general rule that if a creditor nominated his debtor his executor or one of his executors, or nominated one of several joint and several obligors, his executor or one of his executors, the debt or demand was deemed extinguished or released; because the creditor had, by his own act, destroyed or suspended the legal remedy for coercing the debt; and it is a maxim of jaw, that when an obligee, by suck an act, shall destroy or suspend the remedy, the right is gone for ever, as to him and his distributees; Wangford vs. Wangford (supra.) Toller 348, and the authorities there cited: Chitty on Contracts, 296. But the same authorities and others shew that the appointment, by a debtor, of his creditor executor did not release or extinguish the debt, unless there were sufficient assets to enable the executor to make his debt by retainer; *626 and then, as the same person could pay with one hand and receive with the other, the debt was re* leased by operation of law; see also Page vs. Patton et al, V. Peters 304. And it seems also to follow as a consequence, from the reason of the law in this latter class of cases, that if the creditor nominated as executor, did not act or intermeddle as executor in fact, his legal right to his debt was not extinguished; because, in that case, it. was not necessary that he should be a party defendant in a suit to recover his debt, and he had not (in his hands) the means of retaining, as he did not interfere with the assets; I. Saunders (291 g.) and even if the executor who was creditor, administered in fact, his debt was not extinguished, unless the assets were sufficient to pay him according to law; for if they were not so sufficient, he might sue the heir; Plow. 185; Thomas vs. Thompson, II. Johnson’s Rep. 473.
It seems, that if a creditor who was nominated as executor by will of bis debtor 'did not act or intermeddle as executor, his debt was not extinguished .
If debtor, who was appointed executor by will of his creditor, renounced the executorship before the ordinary the debt due by him to the testator was not extinguished.
The principal reason why the appointment of a debtor an executor of the creditor, extinguished the bebt, was, because the executor who must have been a plaintiff,\ could not sue himself: but in Wangford vs. Wangford, Holt Ch. J. assigned some other and additional reasons: that is, first, because the appointment was generally deemed a legacy of the debt ; second, because the executor having the power to release the debt, it was considered as virtually extinguished. The inability to sue, was however the efficient reason, if not the only sound one.
All the authorities on the point agree however, that if the executor renounced before the ordinary, the debt was not extinguished; see I. Salk. 307.
In this case, it does not appear from the pleadings, that P. G. Rice had ever renounced his right to be an executor of his creditor, Mrs. Strong, or that he had, in form, in' (he county court or elsewhere “refusedf and therefore, according to the common law, he could not be sued for the debt, because it would be necessary that he should be both a plaintiff and a defendant, according to the foregoing authorities; and therefore Mitchell, the assignee of Finley, could not maintain a suit which the assignor could not (if he had never assigned) have maintained in his own name; Gatewood vs. Lyle, V. Mon. 7.,
In this country, when one executor has proved the will and become completely qualified to act, in all respects, as executor, the other persons, who were nominated by the will as executors but have never taken the oath or executed bond, as required bylaw, are not executors de jure.
In this country, probate & qualification by one executor does not enure to the benefit of an-w^snom-mated asaco executor by'
executor, as long as he t0 duly qualified executor, hi'-. all,and exclu-the onl™ exe* cutor dejure,
*627 But we are of opinion that the foregoing doctrines of the common law, are not decisively applicabe in this state.
1st. By statutes of Virginia, enacted many years prior to the separation, (1711-33-48 and 85,) and by a statute of this state, (I. Digst. 625) executors are required to take an oath and give a bond with sufficient sureties for ensuring their faithful administration. Probate cannot be obtained without such oath and bond.
They are required to sell the personal estate after {not before) such qualification.
Now it seems to us clear and almost undeniable that, in this country, persons merely nominated executors, but who never took the oath nor executed the bond required by our statutory law, cannot be executors de jure, if any other person who was nominated had proved the will, and became completely qualified, according to the law, to act in all respects as the executor.
If co-nominees can, without giving bond for securing creditors and others, control the executor who has given such security, and thus become vested with full power, then the whole statutory system of Virginia and Kentucky (on this subject) may become nugatory; all its precautions may be evaded, and its end and policy may be frustrated. The probate and qualification by one as executor cannot, under our system, inure to the benefit of another, merely because he was initiated as an executor by the will. The qualified executor must, as long as he shall be the only one who has been duly qualified, have all and exclusive powers as the only executor de jure.' And it seems to us manifest that he alone can sue or be sued as as the lawful executor. Whether another, nominated also by the will, and who never refused or renounced in the court of probate, may afterwards be invested with equal legal rights as an executor, by taking the oath, and giving the security required by law, we need not now decide: for, admitting that he might be, he cannot exercise such rights until such qualification; until then he must be considered as having waived or forfeited the fiducial trust.
Then as Rice had never been legally qualified as *628 executor, Finley could (in his own name alone) have maintained a suit against him, and had an exclusive right to assign the bond; Monroe, executor of Jones vs. James, IV. Munford 194, is a strong and elaborate case on ^le PrincapLs here involved, and sustains the de-? duction which we have made from the statutory system in relation to probates and executors,
The executor, and no other, can sueorbe sued executonWf°
Although debtor is nom-a^one of The executors of his creditor, yet, if he fail required by* law, the debt dneby him is no ex inguish
thmoPdebtor as an executor does not, Sliimhom' a suit on his obligation.
Debtor, pot-heía^been^ nominated as one of the creditor°must in order to exempt himself from suit, on hisobligation, by thequalifi-acquire a°r> fight,notoniy to sue, but to obtain6judgments as executor.
*628 Even according to the common law, nominating a debtor an executor did not extinguish the legal obli-gati°n R he renounced and. an administrator cum tes-lamento had been appointed; because, in that event, a suit could have been maintained by the administra-t°ragainstthe debtor; and the debt could not have been extinguished by the mere nomination of the executor, or by any act which he may have attempted, because yg renunciation operated from the death of the testator, by relation; see Wangford vs. Wangford (supra.) Should not the like consequences flow from the quali-fiCf,tion of Finley, and the refusal or failure of Rice ^ j,ecome equally qualified? We think so.
^7 the 4?th sectionof the act of 1797 (I. Digst, 632) it is declared that “the appointment of a debtor executor shall, in no case, be deemed an extinguishment of the debt, unless it be so directed in the will.”' This enactment will not authorize an executor to sue himself. But it proves that the debt has not. been, in this case, extinguished; and that, consequently, the action could have been maintained by Finley against Rice, unless Rice had been a necessary co-plaintiff. It tends also, we think, to prove that the mere nomination of a debtor executor cannot, per se, exonerate him from a suit at law, for enforcing his obligation.
He must acquire a right not only to sue, but to de-c^are and obtain judgments as executor, before he can he exempted from a suit on his obligation, by the executor or his assignee. He cannot sue as executor'i therefore Finley could sue without (in the language of Plowden) naming Mm who does not administer.
It is not material to the question we are now considering, how much power an executor may possess ac<^ rightfully exercise, before probate; for, after probate, a mere nominee who renounced, or who *629 never gave bond (another having done so) can have no power as an executor de jure: and if he might, before probate, have released debts, it does not pear that Rice did any such thing: and the forty-ninth section of the act of 1797, shews that a mere right to have released the debt cannot have operated as an extinguishment. It may be questionable whether, if Rice had, in fact, released his obligation before probate, his failure to qualify as executor, would not, by retro-action, have avoided the release.
Cunningham,, for plaintiff; Mills and Brozun and Hardin, for defendants.
Judgment reversed, and cause remanded, with instructions to overrule the demurrer to the replication.